————o————

No. 4098.

(Court of Appeal, Parish of Orleans.)

FINKELSTEIN BRO·. AND FRIEDBERG vs. VIRGINIA STATE INSURANCE COMPANY OF RICHMOND, VIRGINIA.

Issues of fact alone are involved herein

Appeal from Civil District Court, Division A.

Edgar M. Cahn and W. S. Parkerson, for plaintiff and appellee.

Clegg & Quintero, for defendant and appellant.

ESTOPINAL, J. This is a proceeding to recover a loss on a policy of fire insurance. The record comprises a mass of testimony and exhibits the case having been very thoroughly threshed and presented by able counsel and any attempt to quote the testimony would make this opinion of interminable length without adding to its merit.

Questions of fact alone are involved and our examination of the record convinces us that the learned Judge who tried the case below and who saw and heard the witnesses has correctly resolved these facts in favor of the plaintiff. Taking up the defenses we shall dispose of them consecutively.

The first charge made is "that the assured has concealed and misrepresented in writing and otherwise material facts

154

and circumstances concerning the insurance and the subject thereof."

The insurance in this case was on stock in trade consisting principally of gent's furnishing goods, clothing manufactured and in the process of manufacture, etc., etc, while contained in the lower floor of the three story brick, slate roof building situated Nos. 1023 and 1025 Canal street to the amount of fifteen hundred ($1500) dollars. The evidence does not substantiate the first charge made in defense but on the contrary it is, satisfactorily and affirmatively shown that the plaintiff did not conceal or misrepresent material facts connected with the subject of the insurance.

Secondly and thirdly it is charged by the defendant company that the assured or one of them has been guilty of fraud and false swearing touching matters relating to this insurance and the subject thereof since the date of the fire and the claim made for the alleged loss.

Further it is charged that the assured has made under oath statements purporting to be proofs of loss which are not true and had been guilty of fraud in making a grossly exaggerated claim for loss, claiming *loss* or *damage by fire* of *goods* and *property which were not lost* or *damaged by fire*, and in furnishing untrue and false books and vouchers and documents in attempted proofs of lost, etc, in violation of the conditions and stipulations and warranties of the insurance policy

It is the well settled jurisprudence "that the swearing must not only be false, but it must be knowingly and wilfully done with intent to defraud the company."

There is abundant proof to be found in the record showing the good faith of plaintiffs and their endeavors to secure an adjustment was prosecuted by them in a fair, open, candid way.

The proofs of loss submitted by plaintiffs appear approximately and sufficiently correct to support their claim against defendant.

The defendant's attempt to show that the fire was not as destructive as claimed, and the loss was not as large as claimed we think is disproved by the exhibit produced in the shape of a photograph showing the exact and precise condition of the interior of the building occupied by plaintiffs after the fire. From this and the testimony of several witnesses showing ex-

act conditions, and the wide disparity between the figures of the company's adjusters and the figures submitted by plaintiffs, we are inclined to believe that the latter's figures are the more trustworthy.

Whether creditable or not we need not say, but we think that common fairness should have prompted defendant's agents to notify plaintiffs of intention to visit the damaged store in order to appraise the value of the property saved. This the adjusters did not do but without notice to the plaintiffs repaired to the place on a Sunday and then made their appraisement.

On the other hand it is disclosed that plaintiffs repeatedly invited the defendant company to be present at the appraisement which was made for them by two merchants, experts in the line of business conducted by plaintiffs.

Of the appraisements made, considering the action of the company in making an ex parte appraisement we most naturally adopt that submitted by plaintiffs and it matters not that the defendant was not represented. The company had been requested to be present.

It is shown that the expert merchants employed by plaintiffs made an actual appraisement, a valuation of the property whereas the defendant's representative admits he made *no appraisement* but simply *inventoried* the property.

Plaintiffs' appraisers value the property at $2823.53, the company's adjusters at $6475.02.

This property was kept in the front of the store shown by the photograph to have literally gutted.

The testimony of the witnesses for the defendant standing alone satisfies us that the estimates of value submitted by them were not ascertained with that care and precission required and are therefore not reliable.

It is affirmatively shown that at the request of the defendant company all of the plaintiffs' books, invoices, etc., etc., and proofs of loss were turned over to it and that the company simply held off payment but made no protest or objection of any kind. It appears to us that under the conditions found here and the conduct of the insurance company in negotiating with the insured looking to an ajustment of the loss, is, under well settled principles, tantamount to a waiver and estoppel.

"It may be asserted broadly that if, in any negotiations or

transactions with the assured after knowledge of the forfeiture, it (insurance company) recognizes the continued validity of the policy, or does acts based thereon, or requires the assured, by virtue thereof, to do some act or incur some trouble or expense, *the forfeiture* is as a matter of law, waived, and it is now settled that such a waiver need not be based upon any new agreement or an estoppel.

"Clement on Fire Insurance Vol. 1 p. 431." Waiver by the insurance company after a loss in demanding compliance with the terms of the policy requiring the insured to do some act or incur expense on account thereof, with knowledge of the facts constituting ground of forfeiture, is not prevented by adding to the demand. "This company neither admits nor denies its liability, nor waives any of its rights under said policy," or "The company does not waive any of its rights and defenses, but expressly reserves each and every one."

Clement on Fire Insurance Vol. 1 p. 438.

"Where insured, at the request or demand of the company, is put to the trouble or expense in the pioduction of proofs or loss, a waiver of a breach of warranty or condition known to the company will arise, though the demand or request is accompanied by a general statement that no waiver of any right of the company is intended.

It would appear that the company's action by long negotiation with plaintiffs, entailing upon them great trouble and doubtless some expense, must operate as a waiver by the company of every charge and defense made to this suit

Plaintiffs have produced all the books and accounts which they were required to keep under the terms of the policy of insurance and their production is a substantial compliance with the ' Iron Safe Clause" no matter where the books were kept. The books were not destroyed by the fire and the defendant cannot complain.

The judgment appealed from is affirmed.

January 28, 1907.

Rehearing refused March 12, 1907.